**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 26-cv-01559-NYW

STANISLAV BABIUK,

Petitioner,

v.

WARDEN – DENVER CONTRACT DETENTION FACILITY,
ICE – DENVER, and
DHS – SECRETARY,

Respondents.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), [Doc. 1], and the Emergency Motion for Temporary Restraining Order and Immediate Release ("Motion for TRO"), [Doc. 2]. Respondents filed a consolidated response, [Doc. 12], and Petitioner has replied, [Doc. 20]. For the following reasons, the Petition is **GRANTED** and the Motion for TRO is **DENIED as moot**.

**BACKGROUND**

Petitioner Stanislav Babiuk ("Petitioner" or "Mr. Babiuk") is a citizen of Ukraine who has been present in the United States since 2023. [Doc. 12-1 at ¶¶ 4–5]. When he entered the United States, he "was given humanitarian parole under 8 U.S.C. § 1182(d)(5) and paroled into the United States" until July 6, 2025. [*Id.* at ¶ 5]. Mr. Babiuk stayed in the United States beyond that date. [*Id.* at ¶ 6].

On January 15, 2025, Mr. Babiuk was arrested in Wisconsin for operating a commercial vehicle without a proper license. [*Id.* at ¶ 8]. Two days later, he filed an Application for Temporary Protected Status, which remains pending with U.S. Citizenship and Immigration Services ("USCIS"). [*Id.* at ¶¶ 9, 22]. An arrest warrant was later issued for him based on a failure to appear for the Wisconsin traffic offense. [*Id.* at ¶ 10].

In April 2025, officers from U.S. Customs and Immigration Enforcement ("ICE") encountered Mr. Babiuk at a county jail in Florida, following his arrest on DUI and domestic battery charges. [*Id.* at ¶ 11]. In November 2025, ICE officers arrested Mr. Babiuk and detained him in Florida. [*Id.* at ¶ 12]. He was transferred to ICE's Denver Contract Detention facility on December 10, 2025. [*Id*. at ¶ 14].

The Government initiated removal proceedings, [*Id.* at ¶ 15], and Mr. Babiuk filed an Application for Asylum and for Withholding of Removal, [*Id.* at ¶ 19]. On March 12, 2025, an immigration judge ("IJ") denied Mr. Babiuk's asylum application, ordered him removed to Ukraine, and denied his application for withholding of removal. [*Id*. at ¶ 20]. Mr. Babiuk appealed the IJ's decision to the Board of Immigration Appeals. [*Id*. at ¶¶ 21, 22]. He remains detained pending a decision on his appeal. [*Id*. at ¶ 23].

In this habeas case, Petitioner asserts one claim for relief alleging a due process violation based on his detention without a bond hearing or determination of flight risk. [Doc.1 at 2]. He seeks immediate release or, alternatively, a bond hearing. [*Id*. at 11]. Respondents contend that Mr. Babiuk's detention is required by 8 U.S.C. § 1225(b). *See* [Doc. 12].

This matter is fully briefed and ripe for disposition. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *See Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

**LEGAL STANDARDS**

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The Court construes Petitioner's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court cannot and does not act as his advocate. *See Hall*, 935 F.2d at 1110.

**ANALYSIS**

Respondents assert that Petitioner is ineligible for a bond because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *See* [Doc. 12 at 4–10]. The Court summarizes the applicable statutory framework before turning to the arguments.

## I. Statutory Framework

Sections 1225 and 1226 of Title 8 govern detention of noncitizens prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018); 8 U.S.C. §§ 1225(b); 1226(a). Section 1226(a) "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'" *Quispe Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303). This section permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here. *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1) (2) (the Attorney General "may continue to detain" or "may release" the noncitizen (emphasis added)). This establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). This section "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297. It provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Under § 1225(a)(1), an "applicant for admission" is

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival

> and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Absent an exception for urgent humanitarian reasons, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297).

## II. Application to Petitioner's Case

Petitioner asserts that his due process rights entitle him to a bond hearing. [Doc. 1 at 2–3]. This invokes the "default rule" of discretionary detention under § 1226(a). *See Quispe Ardiles*, 2025 WL 2783800, at *5. Respondents counter that Petitioner's detention is mandatory under § 1225(b)(2)(A). *See* [Doc. 12].

Respondents contend that because Mr. Babiuk was initially processed under § 1225(b) and paroled into the country under § 1182(d)(5)(A), the expiration of his parole meant that he "reverted back to the same status he had when he was first encountered." [Doc. 12 at 7]. This argument relies on two sources of authority. First, § 1182(d)(5)(A) provides that, upon expiration of parole, a parolee shall "be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Second, the Supreme Court has stated that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation omitted). This rule is referred to as the "entry fiction" doctrine. *See Abdyrakhmanov v. Baltazar*, No. 26-cv-01875-NYW, 2026 WL 1800941, at *5 (D.

Colo. June 23, 2026). Putting these pieces together, Respondents reason that expiration of Mr. Babiuk's parole returned him to his original status—an "arriving alien" seeking admission and detained under § 1225(b)(2)(A). [Doc. 12 at 5–6]. And because the entry fiction limits his due process rights to those provided by statute, a mandatory detention under § 1225(b)(2)(A) works no constitutional violation. [*Id.* at 7–9].

This Court rejected Respondents' theory in *Abdyrakhmanov*. The parole statute instructs only that, upon expiration of parole, a noncitizen be "returned to the *custody* from which he was paroled." § 1182(d)(5)(A) (emphasis added). In this context, the Court explained, custody means "legal control or supervision," not "physical confinement" or "detention." *Abdyrakhmanov*, 2026 WL 1800941, at *5 (quoting *Guzman v. Bondi*, No. 26-cv-01250-KSH, 2026 WL 1534682, at *5 (D.N.J. June 1, 2026)). Moreover, the second half of this portion of § 1182 states that "a former parolee's case 'shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Id.* (quoting § 1182(d)(5)(A)). The term "applicant for admission" requires nothing more than "presence in the United States without admission," *id.* (quotation omitted), so this portion of § 1182(d)(5)(A) "suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal [under § 1225(b)(1)]," *id.* (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025)).

This Court also found *Thuraissigiam*'s "entry fiction" inapplicable to noncitizens who, like Mr. Babiuk, continue living in the country after their parole expires and are later

detained pending removal proceedings. *Thuraissigiam* involved a noncitizen who sought additional procedural protections in an asylum determination because he was stopped 25 yards into U.S. territory, rather than promptly at the border. *See* 539 U.S. at 139–40. The Supreme Court held that "an alien in [this] position has only those rights *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added). While *Thuraissigiam* made a passing reference to noncitizens stopped upon reentry after being "paroled elsewhere in the country for years pending removal," it did not address the status of noncitizens who overstay their parole and are later placed in removal proceedings. *See Abdyrakhmanov*, 2026 WL 1800941, at *5–6. "Under § 1182, a person who stays in the country past their period of parole 'is deemed to be unlawfully present in the United States.'" *Id.* at *6 (emphasis omitted) (quoting 8 U.S.C. § 1182(a)(9)(B)(ii)). Because it would "def[y] logic to deem someone simultaneously awaiting entry 'at the border' and 'present' inside the country," the entry fiction must end when a person continues living in the country after parole expires. *Id.* (quoting *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 367 (W.D.N.Y. 2025)). Thus, the Court declined to extrapolate *Thuraissigiam*—which dealt with due process rights "regarding admission" for noncitizens stopped "at the threshold of initial entry"—into the post-parole detention context and in a manner that would conflict with § 1182. *See Thuraissigiam*, 539 U.S. at 107, 139; *Abdyrakhmanov*, 2026 WL 1800941, at *5–6.

Having dispensed with the entry fiction, the Court proceeded to review the petitioner's detention "in the same manner as any other noncitizen already present in the United States." *Abdyrakhmanov*, 2026 WL 1800941, at *6 (quotation omitted); *accord*

§ 1182(d)(5)(A). That petitioner had been living in the United States for some time before he was detained, so he could not be considered "seeking admission" for purposes of § 1225(b)(2)(A). *Abdyrakhmanov*, 2026 WL 1800941, at *6. Section 1226(a)'s default rule of discretionary detention therefore applied, and a bond hearing was required. *Id.*

The Tenth Circuit's decision in *Santillan Quiroz v. Mullin*, issued after *Abdyrakhmanov* and during the pendency of this case, confirms this Court's approach. 180 F.4th 1226 (2026). The petitioner there had unlawfully crossed the border—without admission or parole—and lived in the United States for years before being detained and placed in removal proceedings. *Id.* at 1233. He was undisputedly an "applicant for admission" as defined in § 1225(a)(1) because he was "present in the United States without having been admitted." *Id.* at 1238. But, the Tenth Circuit held, this did not necessarily mean he was "seeking admission" for purposes of § 1225(b)(2)(A). *Id.* To be seeking admission, a noncitizen must "take[] some kind of ongoing action to request lawful entry into the United States." *Id.* This can only occur when a noncitizen is "seeking to enter the United States at the border," because once an unlawful entry occurs, "no amount of legal maneuvering allows him to go back in time and make his initial entry lawful." *Id.* The Circuit thus declined to "to extend § 1225(b)(2)(A)'s mandatory detention to noncitizens arrested in the country's interior." *Id.* at 1249. Nevertheless, the petitioner could still be detained under § 1226(a), so the Tenth Circuit instructed the district court to order the Government to "either provide him with a bond hearing or else release him." *Id.* at 1251 n.13.

Taken together, *Santillan Quiroz* and *Abdyrakhmanov* control this case. When Mr. Babiuk's parole expired, he was, by law, "unlawfully present" in the interior of the United States. § 1182 (a)(9)(B)(ii)). He then remained in the interior for months until he was arrested and detained. [Doc. 12-1 at ¶¶ 6, 12]. In other words, Mr. Babiuk is neither at the threshold of entry nor seeking admission to the United States. *Santillan Quiroz*, 180 F.4th at 1238. As in *Santillan Quiroz*, he is an applicant for admission unlawfully present in the country. *Id.*; § 1225(a)(1). And like "any other applicant for admission" in this situation, *see* § 1182(d)(5)(A), his detention is governed by § 1226(a), *see* *Abdyrakhmanov*, 2026 WL 1800941, at *6; *Santillan Quiroz*, 180 F.4th at 1251 n.13.[1]

Given that Mr. Babiuk may be detained under § 1226(a), the "process due to him is that which is afforded under [§ 1226(a)]." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026). That process, this Court has held, is an individualized bond determination. *Villegas-Godoy v. Baltazar*, No. 26-cv-01842-NYW, 2026 WL 1954768, at *4 (D. Colo. July 6, 2026) (citing *Santillan Quiroz*, 180 F.4th at 1251 n.13) (further citations omitted). Because Mr. Babiuk has received no such determination, his ongoing detention violates his due process rights. *See id.*

## III. Appropriate Remedy

Mr. Babiuk asks that he either be granted a bond hearing or released immediately. [Doc. 1 at 11; Doc. 20 at 20]. But § 1226(a) "does not require release—it provides DHS the discretion to grant" release on bond. *Nava Hernandez v. Baltazar*, No. 25-cv-03094-

[1] Respondents do not contend that Mr. Babiuk's criminal charges qualify him for mandatory detention under 8 U.S.C. § 1226(c).

CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025). Consistent with its usual practice, the Court finds it most appropriate to order Respondents to provide Petitioner with the statutorily required bond hearing. *See, e.g.*, *Villegas-Godoy*, 2026 WL 1954768, at *5.

Moreover, following the weight of authority in this District, the Court has previously required the Government to bear the burden of proof at a § 1226(a) bond hearing where, as here, the petitioner was initially erroneously detained under § 1225. *See, e.g.*, *Diaz Lopez v. Noem*, No. 25-cv-04089-NYW, 2026 WL 206220, at *5 (D. Colo. Jan. 27, 2025); *Martinez Escobar v. Baltazar,* No. 26-cv-00296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026); *see also, e.g., Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026) ("[T]he weight of authority in this District is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing." (cleaned up) (collecting cases)). *But see De La Cruz v. Baltazar,* No. 26-cv-00360-PAB, 2026 WL 439217, at *4 (D. Colo. Feb. 17, 2026) (declining to shift burden to the Government in a similar case). The Court also concurs with the decisions concluding that "the clear and convincing standard that generally applies to civil detention where liberty is at stake is appropriate here as well." *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025) (quotation omitted); *see also Martinez Escobar*, 2026 WL 503313, at *5 (collecting cases).

Accordingly, Respondents are **ORDERED** to provide Mr. Babiuk a bond hearing no later than **August 26, 2026**. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention. On or before **September 2, 2026**, the Parties shall file a joint

status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; and (2) whether any additional proceedings in this matter are required.[2]

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Application for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 [Doc. 1] is **GRANTED**;

(2) The Emergency Motion for Temporary Restraining Order and Immediate Release [Doc. 2] is **DENIED as moot**;

(3) Respondents shall provide Petitioner a bond hearing no later than **August 26, 2026**. At the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and

(4) On or before **September 2, 2026**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no Petitioner is hearing was held, advise the Court of the date Petitioner was released from custody; and (2) whether any additional proceedings in this matter are required.

[2] Because Petitioner's Motion for TRO requests substantially the same relief as his Petition, *see* [Doc. 2 at 5], the Motion for TRO is respectfully **DENIED as moot**, *see, e.g.*, *Martinez Escobar*, 2026 WL 503313, at *6.

DATED: August 19, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge